Michael A. Troisi, Esq. (MT 2002)
Michael P. Welch, Esq. (MW 7559)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Liberty Mutual Fire Insurance Company,*
*Liberty Insurance Corporation, Safeco Insurance Company of*
*Indiana, and Safeco National Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
LIBERTY INSURANCE CORPORATION, SAFECO
INSURANCE COMPANY OF INDIANA, and SAFECO
NATIONAL INSURANCE COMPANY,

Docket No.:_____ (      )

                                            Plaintiffs,

                                                          **Plaintiffs Demand a Trial by Jury**

                 -against-

RAINBOW INTERNATIONAL OF HUDSON VALLEY,
LLC, PRESTIGE REALTY GROUP, INC., PRESTIGE
NY CONSTRUCTION GROUP, INC. a/k/a PRESTIGE
CONSTRUCTION NY GROUP, INC., EDWARD J.
SILVESTRI, and WETZER JEANNOT,

                                            Defendants.
-----------------------------------------------------------------X

## **COMPLAINT**

Plaintiffs Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation,

Safeco Insurance Company of Indiana, and Safeco National Insurance Company (collectively,

"Liberty Mutual" or "Plaintiff"), by and through their counsel, Rivkin Radler LLP, as and for

their Complaint against Defendants, hereby allege as follows:

1

## NATURE OF THE ACTION

1.      This action seeks to recover at least $265,000.00 that the Defendants, individually and jointly, have intentionally and wrongfully stolen from Liberty Mutual as the result of an ongoing scheme to submit multiple, knowingly false, fraudulent, and/or grossly inflated invoices, bills, estimates, statements, and letters for, *inter alia*, architectural services, building repairs, and cleaning services (collectively "invoices") that were never performed in connection with first party property damage claims.

2.      Defendants' systematic scheme was intended to and did, in fact, defraud Liberty Mutual through the intentional submission of knowingly false invoices, which were justifiably relied on by Liberty Mutual to make payment to the Defendants, in whole or in part, for the allegedly rendered services.

## THE PARTIES

**A.      The Plaintiffs**

3.      Plaintiff Liberty Mutual Fire Insurance Company is a Wisconsin corporation with its principal place of business in Boston, Massachusetts.  Liberty Mutual Fire Insurance Company is authorized to conduct business and to issue policies of insurance in the State of New York.

4.      Plaintiff Liberty Insurance Corporation is an Illinois corporation with its principal place of business in Boston, Massachusetts.  Liberty Insurance Corporation is authorized to conduct business and to issue policies of insurance in the State of New York.

5.      Plaintiffs Safeco National Insurance Company and Safeco Insurance Company are Indiana corporations with their principal places of business in Boston, Massachusetts.  Safeco

National Insurance Company and Safeco Insurance Company of Indiana are authorized to conduct business and to issue policies of insurance in the State of New York.

**B.**   **The Defendants**

6.    Upon information and belief, Defendant Rainbow International of Hudson Valley, LLC (hereinafter "RBW"), is a New York limited liability company with its principal place of business located at 8 High Mountain Road, Pomona, New York 10970.

7.    Upon information and belief, RBW is a fire and water damage mitigation and restoration company through which multiple false, fraudulent, and/or grossly inflated invoices were submitted to Liberty Mutual for payment.

8.    Upon information and belief, RBW was a preferred mitigation vendor for Liberty Mutual, but was removed from the program, because it was also soliciting and performing repair work, which it was prohibited from doing under certain agreements with Liberty Mutual.

9.    Upon information and belief, Defendant Prestige Realty Group, Inc., (hereinafter "Prestige Realty"), is a New York corporation with its principal place of business located at 8 High Mountain Road, Pomona, New York.

10.    Upon information and belief, Defendant Prestige Realty is a licensed general contractor in the State of New York, through which multiple false, fraudulent, and/or grossly inflated invoices were submitted to Liberty Mutual for payment.

11.    Upon information and belief, Defendant Prestige NY Construction Group, Inc., a/k/a Prestige Construction NY Group, Inc. (hereinafter "Prestige Construction"), is a New York corporation with its principal place of business located at 8 High Mountain Road, Pomona, New York.

12.    Upon information and belief, Prestige Construction maintains a Home Improvement License with the Westchester County, State of New York, Department of Consumer Protection, under license #WC-26098-H13.

13.    Upon information and belief, Defendant Prestige Construction is a licensed general contractor in the State of New York, through which multiple false, fraudulent, and/or grossly inflated invoices were submitted to Liberty Mutual for payment.

14.    Defendants Prestige Realty and Prestige Construction are referred to collectively herein as "Prestige."

15.    Upon information and belief, Defendant Wetzer Jeannot ("Jeannot") resides at 8 High Mountain Road, Pomona, New York and is a citizen of the State of New York.

16.    Upon information and belief, Defendant Jeannot is the owner and President of RBW, Prestige Realty, and Prestige Construction.

17.    Upon information and belief, Defendant Jeannot has knowingly participated, individually and jointly with co-defendants, in a systematic scheme to defraud Liberty Mutual through the submission of multiple false, fraudulent, and/or grossly inflated invoices to Liberty Mutual for payment.

18.    Upon information and belief, Defendant Edward J. Silvestri (Silvestri") resides in and is a citizen of the State of New York.

19.    Upon information and belief, Defendant Silvestri is a principal and employee of RBW, Prestige Realty, and Prestige Construction.

20.    Upon information and belief, Defendant Silvestri has knowingly participated, individually and jointly with co-defendants, in a systematic scheme to defraud Liberty Mutual

through the submission of multiple false, fraudulent, and/or grossly inflated invoices to Liberty Mutual for payment.

21.     Upon information and belief, Defendants Jeannot and Silvestri acted, individually and collectively, as agents of and for Defendants RBW, Prestige Realty, and Prestige Construction to perpetuate the fraudulent scheme(s) detailed below.

22.     Upon information and belief, Defendants RBW, Prestige Realty, Prestige Construction, Jeannot, and Silvestri, have knowingly participated in a singular scheme or schemes and, together, they have committed the wrongful acts described in this Complaint.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over the claims asserted by Liberty Insurance Corporation as against each of the Defendants under 28 U.S.C. §1332(a)(1), because Defendants acted in concert pursuant to a common plan to commit the fraud alleged herein and are jointly and severally liable for the damages caused in excess of the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. In addition, this Court has supplemental jurisdiction over the subject matter of the remaining claims asserted by Liberty Mutual Fire Insurance Company, Safeco Insurance Company of Indiana, and Safeco National Insurance Company in this action pursuant to 28 U.S.C. § 1367.

24.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

25.    Liberty Mutual underwrites homeowners insurance policies in the State of New York.

26.    Each of the insureds identified below maintained homeowners policies of insurance with Liberty Mutual, which provided coverage for building and contents damages caused by certain covered causes of loss.

27.    The insureds identified below each submitted claims to Liberty Mutual under their respective homeowners insurance policies for damages to their homes allegedly caused by or resulting from water damage, including damage purportedly caused by or resulting from plumbing pipe/fixture failures in the basements or main levels of their homes, or as a result of water back-up through sewers and drains.

28.    The insureds identified below each retained Defendants' services in connection with their claims, including, *inter alia*, purported water damage mitigation, remediation, repair, and architectural services.

29.    Several of the claims were reported to Liberty Mutual by either the insureds or Defendants after Defendants had already performed a significant amount of alleged water mitigation and demolition services, and without providing Liberty Mutual the opportunity to inspect the damaged property.

30.    Liberty Mutual investigated and adjusted each of the claims below and issued payment directly to the Defendants' and/or the insureds in connection with Defendants' purported services based on their invoices submitted to Liberty Mutual.

31.    Upon information and belief, any claim payments issued by Liberty Mutual directly to the insureds based on Defendants' false and fraudulent invoices was thereafter paid to

Defendants by the insureds in connection with their service agreements and/or an executed assignment of claims.

### A.    **Defendants' fraud in connection with Insured A**

32.    On January 16, 2016, Insured A purportedly sustained a water damage loss to his home located in Armonk, New York.

33.    Insured A submitted a claim for the loss to Liberty Mutual.

34.    Upon information and belief, Insured A retained Defendants to perform water damage mitigation, demolition, and repair services in connection with his loss.

### (i)    **MV Concept Inc.**

35.    In connection with their alleged services, Defendants submitted several purported invoices to Liberty Mutual from a third party vendor, MV Concept Inc., including several "billing estimates" and/or "bids" in connection with the replacement of custom cabinetry in Insured A's home.

36.    Defendants submitted a "billing estimate" from MV Concept Inc., dated March 21, 2016, in the amount of $456,000 to replace custom kitchen cabinets.

37.    Defendants submitted a second "billing estimate" from MV Concept Inc., dated May 1, 2016, in the amount of $120,000 to replace, among other things, custom cabinets in the dining room and to supply a Brazilian Cherry dining table.

38.    Defendants submitted a third "billing estimate" from MV Concept Inc., dated May 1, 2016, to Liberty Mutual for the purported replacement of a custom wall unit in Insured A's media room at a cost of $80,000, and together with overhead and profit, the total allegedly due on the media room "billing estimate" was $96,000.

7

39.    The three MV Concept Inc. invoices all contained the address of "25 Call Hallow Rd, Pomona, NY 10907", with a telephone number of XXX-XXX-4797, and each indicated that they were prepared for Defendant Prestige, but none of the invoices included the name "Valdis Mede".

40.    Upon information and belief, there is no "Hallow Rd" in Pomona, New York.

41.    On or about December 14, 2017, the principal of MV Concept, Inc., Valdis Mede, provided a written statement to Liberty Mutual, wherein he advised, in sum and substance, the following: he has not done any work for Defendants for the past five years; the estimate, dated March 21, 2016, in the amount of $456,000, was not prepared by him; he did not do any of the work detailed on the estimate/bid; and the telephone number listed is incorrect.

42.    Mr. Mede also provided Liberty Mutual with a copy of his company's actual invoice, which includes his correct address of "25 Call Hollow Rd", his full name appears on the invoice, and his correct telephone number is listed as well.

43.    Upon information belief, based on Mr. Mede's written statement that he has not done any work for Defendants for the past five years, any and all MV Concept estimates, bids, and invoices submitted by Defendants to Liberty Mutual since approximately December 2012 in connection with any claim, including all of the claims identified herein, are false and fraudulent.

44.    In connection with Insured A's claim, Liberty Mutual prepared a building damage estimate in the amount of $822,144.93.

45.    Liberty Mutual's building damage estimate included a line item, no. 240, for "cabinetry (bid item)," which was from a "quote to replace water damaged entertainment center."

46.    Liberty Mutual included the MV Concept Inc. "billing estimate", dated May 1, 2016, in the amount of $80,000 as the unit price for this item, and together with tax, overhead and profit, calculated a replacement cost value of $98,902.80.

47.    In correspondence to Liberty Mutual, Defendants expressly "agree[d] to perform all work outlined in the estimate provided by Liberty Mutual at a cost of $822,144.93," and requested payment in connection therewith.

48.    The MV Concept Inc. "billing estimate", dated May 1, 2016, was false and fraudulent.

49.    Defendants knowingly and intentionally submitted the false and fraudulent MV Concept Inc. "billing estimate", dated May 1, 2016, to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

50.    In reasonable reliance on Defendants' submission of the MV Concept Inc. "billing estimate", dated May 1, 2016, Liberty Mutual paid $98,902.80.

**(ii)    EKO Design Group, LLC**

51.    In connection with Insured A's claim, Defendants submitted a "statement" from EKO Design Group, LLC, Eric Knute Osborn Architect, dated May 5, 2016, with an address of "1 Harbor Point Drive, Haverstraw, New York 10926" and telephone number of XXX-XXX-7474. The "statement" also indicates that it was for "invoice "2016-5-3." The statement includes under "work performed" the following: "as built measuring … prepared plans for renovation and repairs of entire home for permits and construction – on site supervision," in the amount of $24,540.00. The statement indicates that this amount was "paid."

52.    Upon information and belief, at all relevant times herein, 1 Harbor Pointe Dr. was a private three bedroom condominium owned by Defendant Jeannot.

9

53.    Upon information and belief, including a search of the New York State, Department of Education, Office of the Professions' website, Eric Knute Osborn's address is 58 Barnes Road, Washingtonville, New York 10992.

54.    Upon information and belief, no architectural services are performed out of 1 Harbor Pointe Dr.

55.    In furtherance of their fraudulent scheme, Defendants have used the 1 Harbor Point Dr. address as the business address on other fraudulent vendor invoices in unrelated claims submitted to Liberty Mutual, including, as detailed herein, being used as an address for EKO Design Group, LLC, as well as for alleged third party vendors, "J Lee Classic Dry Cleaning" and "Capital Stone, Inc."

56.    Upon information and belief, including a search of the New York State, Department of State, Division of Corporations' website, EKO Design Group, LLC was formed on or about May 18, 2016, which is after the date of above-referenced "statement."

57.    Upon information and belief, the Eric Knute Osborn-Architect statement, dated May 5, 2016, was false and fraudulent.

58.    Defendants knowingly and intentionally submitted the false and fraudulent Eric Knute Osborn-Architect statement, dated May 5, 2016, to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

59.    In reasonable reliance on Defendants' submission of the fraudulent Eric Knute Osborn-Architect statement, dated May 5, 2016, Liberty Mutual paid $24,540.00.

60.    Upon information and belief, Defendants submitted another purported estimate and/or billing statement from Eric Knute Osborn-Architect, dated May 13, 2016, which was for "Mrs. Master Bathroom" custom cabinetry in the amount of $69,202.00 and "Mr. Bathroom"

custom cabinetry in the amount of $37,058.00. The estimate, which was prepared for Defendant Prestige Realty, was for the total amount $127,512.00.

61.    In connection with its investigation of Insured A's claim, Liberty Mutual interviewed Eric Knute Osborn, who advised that he did not prepare the invoice to Prestige Realty, dated May 13, 2016, in the total amount of $127,512.00, denied being involved with the repairs of Insured A's home, and advised that he was not paid the amounts listed on the purported invoice.

62.    Upon information and belief, the estimate from Eric Knute Osborn-Architect, dated May 13, 2016, was false and fraudulent.

63.    Defendants knowingly and intentionally submitted the false and fraudulent May 13, 2016 invoice/billing statement to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

64.    In reasonable reliance on Defendants' submission of the fraudulent Eric Knute Osborn-Architect invoice, dated May 13, 2016, and/or other false and fraudulent sub-bids from MV Concept, Inc. for the replacement of the Mrs. Bathroom and Mr. Bathroom vanities in the amounts of $37,250 and $12,250, respectively, Liberty Mutual paid $46,051.62 and $15,144.49, which amounts included tax, overhead, and profit.

**(iii)    CANDAELECTRIC, INC.**

65.    In connection with Insured A's Claim, Defendants submitted an invoice from CANDA ELECTRIC, INC, invoice #0000015, dated 4/16/16, which included an address of 127 Underhill Lane, Peekskill, NY 10566, XXX-XXX-8035. The invoice contains a typewritten statement from an electrician "Avi". The invoice was for $104,156.

66.    A search of the New York State, Department of State, Division of Corporations' website failed to reveal the existence "CANDA ELECTRIC, INC." as a registered New York corporation.

67.    Upon information and belief, CANDA ELECTRIC, INC. is a fictitious entity with no actual business location.

68.    Upon information and belief, the same name, "Avi", signed a letter under the name of "My Electric, Inc., 1333A North Ave., New Rochelle, N.Y. 10804, XXX-XXX-8035", in connection with Insured C's and Insured E's claims detailed below, under license #1369. However, in Insured C's claim, a Master Electrician License ID was annexed to the electrical permit and stated that it was issued to Joseph M. Alongi, under license no. 1369, at 1333A North Ave., New Rochelle, New York 10804. The company name on the license is "My Electrician". The permit application states Alongi's phone number as XXX-XXX-2662, and not the number listed on the CANDA ELECTRIC, INC. invoice submitted by Defendants.

69.    Upon information and belief, CANDA ELECTRIC, INC, invoice #0000015, dated 4/16/16, was false and fraudulent.

70.    Defendants knowingly and intentionally submitted the false and fraudulent CANDA ELECTRIC, INC, invoice #0000015, dated 4/16/16, to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

**(iv)**    **Capital Stone Inc.**

71.    In connection with Insured A's claim, Defendants submitted a purported estimate to Liberty Mutual from "Capital Stone Inc.," dated June 13, 2016, which included an address of 66 Saw Mill Rd, New City, New York 10956, and a phone number of XXX-XXX-9036.

72.     As detailed below, Defendants also submitted an invoice from Capital Stone Inc. in connection with Insured C's claim, which contained an address of 1 Harbor Point Drive, Haverstraw, NY 10927.

73.     The Capital Stone Inc. estimate, dated June 13, 2016, indicates that it was billed to Defendant Prestige Realty.  The estimate was to provide, among other things, exterior siding, stucco, and paint in the total amount of $132,000.00.

74.     A search of the New York State, Department of State, Division of Corporations' website failed to reveal the existence of Capital Stone Inc.

75.     Upon information and belief, Capital Stone Inc. is a fictitious entity with no actual business location.

76.     Upon information and belief, the Capital Stone Inc. estimate, dated June 13, 2016, was false and fraudulent.

77.     Upon information and belief, Defendants submitted the Capital Stone Inc. estimate for the sole purpose of inducing Liberty Mutual to issue payment to Defendants for the estimate.

**B.     Defendants' fraud in connection with Insured B**

78.     On February 18, 2016, Insured B sustained a water damage loss to his home located in Pleasantville, New York.

79.     On or about, February 19, 2016, Insured B submitted a claim for the loss to Liberty Mutual.

80.     Upon information and belief, Insured B retained Defendants to perform water damage mitigation, demolition, and repair services in connection with the loss.

81.    In connection with their purported services, Defendants submitted a mitigation estimate to Liberty Mutual, as well as several alleged third party vendor invoices.

**(i)    J Lee Classic Dry Cleaning, Inc. Invoice**

82.    Defendants submitted an alleged invoice to Liberty Mutual from "J Lee Classic Dry Cleaning" seeking reimbursement for dry cleaning services rendered and/or paid for by Defendants on behalf of Insured B.

83.    The "J Lee Classic Dry Cleaning" invoice, dated October 24, 2016, was for $11,025, and included the business address of 1 Harbor Pointe Dr., Suite 4, Haverstraw, New York 10927 ("1 Harbor Pointe Dr.").

84.    The J Lee Classic Dry Cleaning invoice states that approximately 750 lbs. of clothing or approximately 200 items were removed from the home.

85.    Defendants' mitigation estimate submitted to Liberty Mutual as purported documentary support for their services, however, contained no charge and/or line item for clothing removal, nor did Defendants ever submit any photographs of Insured B's wet clothing to Liberty Mutual.

86.    A search of the New York State, Department of State, Division of Corporations' website reveals that J Lee Classic Dry Cleaning was incorporated in August 2016, with an address for service of process at 1 Harbor Pointe Dr., Suite 4, Haverstraw, New York 10927

87.    Upon information and belief, at all relevant times herein, 1 Harbor Pointe Dr. was a private three bedroom condominium owned by Defendant Jeannot.

88.    Upon information and belief, at all relevant times herein, no commercial dry cleaning services were ever performed at 1 Harbor Pointe Dr.

89.    Upon information and belief, J Lee Classic Dry Cleaning is a fictitious entity with no known business location.

90.    The J Lee Classic Dry Cleaning invoice was false and fraudulent in that the dry cleaning services detailed therein were never performed.

91.    Defendants knowingly and intentionally submitted the false and fraudulent J Lee Classic Dry Cleaning invoice to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

92.    In reasonable reliance on Defendants' submission of the "J Lee Classic Dry Cleaning" invoice, Liberty Mutual paid Defendants $9,187.50, which was comprised of $11,025, less 10% overhead of $918.75 and 10% profit of $918.75.

**(ii)    CANDAELECTRIC, INC. invoice**

93.    In connection with Insured B's claim, Defendants also submitted a purported invoice to Liberty Mutual from "CANDAELECTRIC, INC." seeking reimbursement for alleged electrical services.

94.    Upon information and belief, "CANDAELECTRIC, INC." is a fictitious entity with no known business location.

95.    The "CANDAELECTRIC, INC." invoice submitted by Defendants was dated April 13, 2016, and included the address of 127 Underhill Lane, Peekskill, New York 10566, and was purportedly billed to Defendant Prestige Realty, c/o Insured B at his home address.

96.    The "CANDAELECTRIC, INC." invoice contained "invoice # 0003027," and included the following list of services: rewire downstairs bathroom to code, rewire entire kitchen to code, rewire entire basement to code, supply and install 12 high hats in basement, supply and install 26 outlets, supply and install 14 switches, supply 6 GFI outlets to current code, replace all

Romex wire that was wet from flood waters, install new panel to accept 12-2 wire, install new 14-2 to new panel, install new breakers.

97.    The "CANDAELECTRIC, INC." invoice stated the amount charged was $20,760.00, which was comprised of the following listed amounts: subtotal ($17,300), 10% overhead ($1,730), 10% profit ($1,730), total ($20,760), amount paid ($20,760), and balance ($0.00).

98.    Invoice # 0003027, however, also appears on another purported "CANDAELECTRIC, INC." invoice submitted by Defendants to Liberty Mutual in connection with an unrelated New Jersey claim ("New Jersey Claim").

99.    The New Jersey claim concerned a purported water loss to a home located in Teaneck, New Jersey 07666.

100.    The "CANDAELECTRIC, INC." invoice, dated May 23, 2016, submitted by Defendants in the New Jersey Claim, provided the name and address of "CANDAELECTRIC, INC.," located at 127 Underhill Lane, Peekskill, New York 10566, and was purportedly also billed to Defendant Prestige Realty, c/o the New Jersey insured at his home address.

101.    The CANDAELECTRIC, INC. invoice submitted by the Defendants in connection with the New Jersey Claim was for the exact same amount charged of $20,760.00, as that submitted in connection with Insured B's claim, including the same amounts listed for the subtotal ($17,300), 10% overhead ($1,730), 10% profit ($1,730), total ($20,760), amount paid ($20,760), and balance ($0.00).

102.    Aside from the exact same invoice numbers and same amounts, the "CANDAELECTRIC, INC." invoice submitted by Defendants in connection with the New Jersey claim included the following nearly identical list of services: rewire upstairs bathroom to

code, rewire entire kitchen to code, rewire entire basement to code, supply and install 14 high hats, supply and install 26 outlets, supply and install 24 switches, supply 6 GFI outlets to current code, replace all Romex wire that was wet from flood waters, install new panel to accept 12-2 wire, install new 14-2 to new panel, install new breakers.

103.    The CANDAELECTRIC, INC. invoice submitted in connection with Insured B's claim was false and fraudulent in that the electrical services detailed therein were never performed.

104.    Defendants knowingly and intentionally submitted the false and fraudulent CANDAELECTRIC, INC. invoice to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

105.    In reasonable reliance on Defendants' submission of the "CANDAELECTRIC, INC." invoice, Liberty Mutual paid Defendants $20,760.00.

**C.    Defendants' fraud in connection with Insured C**

106.    On February 26, 2016, Insured C sustained a water damage loss to her home located in Bedford, New York.

107.    Insured C submitted a claim for the loss to Safeco.

108.    Upon information and belief, Insured C retained Defendants to perform water damage mitigation and repair services in connection with the loss.

**(i)    Rockland Hardwood Flooring, Inc.**

109.    In connection with Insured C's claim, Defendants submitted an invoice from a third party vendor, Rockland Hardwood Flooring, Inc., dated April 5, 2016, for the installation of hardwood floors in the amount of $20,865.15.

17

110.    The invoice purports to have been billed to Defendant Prestige Realty, and bears invoice #1004.

111.    The principal of Rockland Hardwood Flooring, Inc., Ricardo Lemus, provided a written statement to Liberty Mutual, wherein he advised that, in sum and substance, he did not perform the work detailed in invoice #1004, did not provide the invoice to Defendants, and did not charge or collect the amount indicated on the invoice.

112.    Mr. Lemus further advised in his written statement that the form of the invoice itself was not correct for his business, and provided a copy of the correct form, which is materially different from that submitted by Defendants.

113.    The Rockland Hardwood Flooring, Inc., invoice was false and fraudulent in that the services detailed therein were never performed.

114.    Defendants knowingly and intentionally submitted the false and fraudulent Rockland Hardwood Flooring, Inc. invoice to Safeco for the sole purpose of inducing Safeco to pay the invoice.

115.    In reasonable reliance on Defendants' submission of the Rockland Hardwood Flooring, Inc. invoice, Safeco paid an additional amount of at least $1,281.28 above its own flooring repair estimate.

**(ii)    My Electric Inc.**

116.    Upon information and belief, a licensed electrical contractor, Joseph Alongi submitted an electrical permit application in connection with certain electrical work at Insured C's home.

117.    Mr. Alongi's address on the permit application was 1333A North Ave., New Rochelle, New York 10804, with a telephone number of XXX-XXX-2662, and a Westchester County License # 1369.

118.    Upon information and belief, at all relevant times herein, Joseph M. Alongi was a Master Electrician licensed by the Westchester County Electrical Licensing Board, and operating under the company name of "My Electrician, Inc." with an address of 1333A North Ave., New Rochelle, New York 10804.

119.    In connection with Insured C's claim, Defendants submitted a letter, dated May 10, 2016, from "My Electric Inc.," with a purported address of 1333A North Ave., New Rochelle, New York 10804, a telephone number of XXX-XXX-8035, and a license number of 1369.

120.    The May 10, 2016 letter bears the typewritten name "Avi", but is not signed, and is addressed to Defendant Prestige Realty, at 332 Old Post Rd., Bedford, N.Y. 10506.

121.    A search of the New York State, Department of State, Division of Corporations' website failed to reveal the existence of "My Electric Inc."

122.    Upon information and belief, the May 10, 2016 letter was false and fraudulent and not drafted or signed by Mr. Alongi.

123.    Upon information and belief, Defendants drafted the letter utilizing Mr. Alongi's business address and master electrician license number, with a different telephone number, and submitted the letter to Safeco for the sole purpose of inducing Safeco to pay for the rewiring of Insured C's home.

124.     In reasonable reliance on Defendants' submission of the My Electric Inc. letter, Safeco paid $27,015.83 for the rewiring of the dwelling, including demolition of the existing wiring.

**(iii)     EKO Design Group, LLC**

125.     In connection with Insured C's claim, Defendants submitted a purported "Work Contract between Prestige Realty and EKO Designs," dated January 12, 2016, which provided as follows: "EKO designs will charge a 10% of total project fee for all drawings done for Prestige Realty Group.  This fee is for measuring and drawing of projects.  The projects are drawn to scale.  If EKO is to draw a project for new construction the fee will be 17% of the gross sale of the project.  EKO reserves the right to raise the fee depending on the size of the project.  All monies are due when invoiced" ("Work Contract").

126.     The "Work Contract" is purportedly signed by Eric Knute Osborn and Defendant Jeannot.

127.     In connection with Insured C's claim, Defendants submitted an invoice, dated May 4, 2016, from Eric Knute Osborn-Architect in the amount of $14,000, which identified the client as "Prestige Realty" and indicated that the invoice was "paid."

128.     The Eric Knute Osborn-Architect invoice from May 4, 2016 stated that the following work was performed: "field visit with as built measuring on April 28, 2016"; design full set of plans for building department"; "as built floor plans"; "apply for building permit"; design full set of electrical breakdown for building department"; "copy 4 sets for contractor."

129.     Defendants submitted the alleged "Work Contract" and architect's invoice to Safeco as evidence that the expense was incurred by Defendant Prestige in order to induce Safeco to make payment for the invoice.

130.    Defendant Jeannot made certain material representations, in writing, to Liberty Mutual during the course of its investigation of Insured C's claim, including that EKO Designs had been paid for its services by Defendant Prestige Realty.

131.    Upon information and belief, no payment was made by Defendant Prestige Realty to EKO Designs.

132.    Upon information and belief, Defendants submitted the "Work Contract" and Eric Knute Osborn-Architect invoice from May 4, 2016 for the sole purpose of inducing Safeco to issue payment to Defendants for Eric Knute Osborn's and/or EKO Designs' purported architectural services.

**(iv)    MV Concept Inc.**

133.    In connection with Insured C's claim, Defendants submitted a "billing estimate" from MV Concept Inc., dated April 8, 2016, which contained the address of 25 Call Hallow Rd, Pomona, NY 10907, with a telephone number of XXX-XXX-4797, and indicated that it was prepared for Defendant Prestige Realty.

134.    The MV Concept Inc. "billing estimate" indicates under "Job Scope," among other things, "supply and install upper and lower kitchen cabinets and bathroom vanities," in the total amount of $35,978.

135.    As noted above, on or about December 14, 2017, the principal of MV Concept, Inc., Valdis Mede, provided a written statement to Liberty Mutual, wherein he advised, in sum and substance, among other things, that he has not done any work for Defendants for the past five years.

136.    Upon information and belief, Defendants submitted the April 8, 2016 "billing estimate" for the sole purpose of inducing Safeco to issue payment to Defendants for the invoice.

137.     Upon information and belief, based on Defendants' submission of the MV Concept "billing estimate," Safeco increased it payment to Defendants by at least $1,209.07 for kitchen and bathroom cabinets.

138.     Defendants also submitted a "bill estimate" from MV Concept Inc., dated May 1, 2016, for the replacement of twenty-eight (28) doors in the amount of $13,608.

139.     May 1, 2016 is the same date used by Defendants on two other MV Concept, Inc. estimates submitted by Defendants in connection with Insured A's claim.

140.     On or about December 14, 2017, the principal of MV Concept, Inc., Valdis Mede, provided a written statement to Liberty Mutual, wherein he advised, in sum and substance, among other things, that he has not done any work for Defendants for the past five years; the estimate, dated May 1, 2016 in the amount of $13,608 was not prepared by him; he did not do any of the work detailed on the estimate/bid; and the telephone number is incorrect.

141.     Upon information and belief, Defendants submitted the May 1, 2016 "billing estimate" for the sole purpose of inducing Safeco to issue payment to Defendants for the invoice.

142.     Upon information and belief, based on Defendants' submission of the MV Concept's May 1, 2016 "bill estimate," Safeco paid approximately $6,034.17 for the replacement of doors.

**(v)     Capital Stone Inc.**

143.     In connection with Insured C's claim, Defendants submitted two invoices to Safeco purportedly from "Capital Stone Inc."

144.     The first invoice, dated April 1, 2016, included an address of 1 Harbor Point Drive, Haverstraw, NY 10927, and indicated that it was billed to Defendant Prestige Realty. The invoice was for the supply and installation of marble and ceramic tiles in the amount of $21,960.

145.    The second Capital Stone Inc. invoice submitted by Defendants, dated October 17, 2016, contained a different address of 66 Saw Mill Rd, New City, New York 10956.

146.    The second invoice also indicated that it was billed to Defendant Prestige Realty and was for a driveway replacement in the amount of $7,650.00.

147.    A search of the New York State, Department of State, Division of Corporations' website failed to reveal the existence of Capital Stone Inc.

148.    Upon information and belief, at all relevant times herein, Capital Stone Inc. was not located at 1 Harbor Pointe Dr., which is a private three bedroom condominium owned by Defendant Jeannot.

149.    Upon information and belief, Capital Stone Inc. is a fictitious entity with no actual business location.

150.    Upon information and belief, Defendants submitted the Capital Stone Inc. invoices for the sole purpose of inducing Safeco to issue payments for these invoices.

151.    Upon information and belief, based on Defendants' submission of the Capital Stone Inc. invoices, Safeco paid $7,650.00 for the driveway and increased its payment for the ceramic tile by at least $1,042.24.

**D.    Defendants' fraud in connection with Insured D**

152.    On or about March 27, 2016, Insured D sustained a water damage loss to her home located in Chappaqua, New York.

153.    Insured D submitted a claim for the loss to Liberty Mutual.

154.    Upon information and belief, Insured D retained Defendants to perform water damage mitigation, demolition, and repair services in connection with the loss

23

(i)    **CANDAELECTRIC, INC. invoice**

155.    In connection with their services, Defendants submitted a purported invoice from CANDAELECTRIC, INC., invoice no. 003087, which was dated April 14, 2016, in the amount of $10,320, and stated it was "paid."

156.    The CANDAELECTRIC, INC. invoice submitted by the Defendants in connection with Insured B's claim bears invoice no. 003027, which was allegedly prepared over one (1) month after the invoice submitted by Defendants in Insured D's claim, which bears invoice no. 003087.

157.    The CANDAELECTRIC, INC. invoice was false and fraudulent in that the services detailed therein were never performed.

158.    Defendants knowingly and intentionally submitted the false and fraudulent CANDAELECTRIC, INC. invoice dated April 14, 2016 to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

(ii)    **MV Concept Inc. invoice**

159.    In connection with their purported services, Defendants submitted a billing estimate from MV Concept, Inc., dated April 8, 2016, in the amount of $57,600 for a custom television wall set and bookshelves.

160.    As detailed above, on or about December 14, 2017, the principal of MV Concept, Inc., Valdis Mede, provided a written statement to Liberty Mutual, wherein he advised, in sum and substance, among other things, that he has not done any work for Defendants for the past five years; the estimate, dated April 8, 2016 in the amount of $57,600 for the fabrication and installation of custom cabinetry was not prepared by him; he did not do any of the work detailed on the estimate/bid; and the telephone number is incorrect.

161.    The MV Concept, Inc. April 8, 2016 invoice was false and fraudulent in that the services detailed therein were never performed.

162.    Defendants knowingly and intentionally submitted the false and fraudulent MV Concept, Inc. invoice dated April 8, 2016 to Liberty Mutual for the sole purpose of inducing Liberty Mutual to pay the invoice.

**E.    Defendants' fraud in connection with Insured E**

163.    On February 17, 2016, Insured E sustained a water damage loss to his home located in Ossining, New York.

164.    Insured E submitted a claim for the loss to Safeco.

165.    Upon information and belief, Insured E retained Defendants to perform water damage mitigation, demolition, and repair services.

166.    In connection with their services, Defendants submitted a letter from MY ELECTRIC INC., which contained a phone number of XXX-XXX-8035, and was purportedly signed by an individual named "Avi." The letter contained an electrician's license number of 1369.

167.    Upon information and belief, Defendants' false and fraudulent CANDAELECTRIC, INC. invoices noted in the claims above contained the same phone number of XXX-XXX-8035.

168.    Upon information and belief, as noted above, license no. 1369 belongs to licensed electrician, Joseph M. Alongi.

169.    The MY ELECTRIC INC. letter was false and fraudulent and was knowingly and intentionally submitted for the purpose of inducing Liberty Mutual to pay for the rewiring of Insured E's home.

170.    In reasonable reliance on Defendants' submission of the MY ELECTRIC INC. letter, Liberty Mutual paid Defendants $5,930.53.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Common Law Fraud)

171.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

172.    Defendants, individually and collectively, knowingly made false statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their intentional submission of the false, fraudulent, and/or grossly inflated invoices, estimates, statements, and billing estimates detailed above.

173.    With respect to each of the false, fraudulent, and/or grossly inflated invoices, estimates, statements, and billing estimates detailed above, the services detailed in the invoices were not performed and/or were not performed by the vendor identified on the invoice or for the amount stated therein.

174.    With respect to each of the false, fraudulent, and/or grossly inflated invoices, estimates, statements, and billing estimates detailed above, Defendants intended to induce and actually induced Liberty Mutual to make payment, in whole or in part, for the amounts stated in the invoices.

175.    With respect to each of the false, fraudulent, and/or grossly inflated invoices, estimates, statements, and billing estimates detailed above, Liberty Mutual justifiably relied on the false, fraudulent, and/or grossly inflated invoices to make payment to Defendants and/or the insureds, who then paid Defendants based on their service agreements.

176.    Liberty Mutual and its insureds, including the insureds identified herein, have been injured by reason of the above-described fraudulent conduct in that they have paid at least $265,000.00 to Defendants in connection with the false, fraudulent, and/or grossly inflated invoices.

177.    Defendants' conduct was willful and wanton and demonstrates a systematic scheme to defraud Liberty Mutual and its insureds, including the insureds identified herein, as well as the public-at-large, and represents a conscious disregard of their respective rights.

178.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

179.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory damages in an amount to be determined at trial but in no event less than $265,000.00, together with interest, costs, attorneys' fees, and punitive damages in the amount of $5,000,000.00, and such other and further relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
(Unjust Enrichment)

180.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

181.    As set forth above, Defendants engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

182.    When Liberty Mutual paid the false and fraudulent invoices submitted by Defendants, they reasonably believed that they were legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

183.     Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted and distributed amongst themselves notwithstanding their improper, unlawful, and unjust billing scheme.

184.     Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

185.     Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory damages in an amount to be determined at trial but in no event less than $265,000.00, together with interest, costs, attorneys' fees, and punitive damages in the amount of $5,000,000.00, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

186.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury.

**WHEREFORE**, Plaintiffs Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, Safeco Insurance Company of Indiana, and Safeco National Insurance Company demand that a Judgment be entered in their favor:

A.     On the First Cause of Action against all Defendants, individually and jointly, compensatory damages in an amount to be determined at trial but in no event less than $265,000.00, together with interest, costs, attorneys' fees, and punitive damages in the amount of $5,000,000.00.

B.     On the Second Cause of Action against all Defendants, individually and jointly, compensatory damages in an amount to be determined at trial but in no event less than $265,000.00, together with interest, costs, attorneys' fees, and punitive damages in the amount of $5,000,000.00.

C.    For such other and further relief as this Court deems just and proper.

Dated:  December 21, 2018

RIVKIN RADLER LLP

By:  *Michael A. Troisi*

Michael A. Troisi, Esq. (MT 2002)
Michael P. Welch, Esq. (MW 7559)
926 RXR Plaza
Uniondale, New York 11556
RR File:  9162-1078
(516) 357-3000

*Counsel for Plaintiffs Liberty Mutual Fire*
*Insurance Company, Liberty Insurance*
*Corporation, Safeco Insurance Company of*
*Indiana, and Safeco National Insurance Company*

4039803 v1